UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                  CASE NO. 8:16-cr-407-T-27JSS

ORLEY CORTES-FRANCO
ANTONIO ARROYO PANAMENO

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by W. Stephen Muldrow, Acting United States Attorney for the Middle District of Florida, by and through the undersigned Assistant United States Attorney, submits this memorandum regarding a reasonable sentence for Antonio Arroyo-Panameno and Orley Cortes-Franco (collectively, "defendants"). Arroyo-Panameno filed a sentencing memorandum on February 27, 2017, Dkt. No. 61, in which he rendered a legal objection to the Pre-Sentence Report (PSR) arguing for the application of a minor role reduction. Cortes-Franco rendered a legal objection to his PSR arguing for the application of a minor role reduction but there is no sentencing memorandum as of this filing.

The sentencing guideline range for both defendants is 135-168 months. Per the terms and conditions of the agreement between the U.S. Attorney's Office for the Middle District of Florida and the defendants, the undersigned has no objection to the low end of the applicable guideline range: 135 months.

## I.    BACKGROUND

### A.    Factual Background

Per the factual bases in the plea agreement – Dkt. Nos. 38, 39 – the following facts are not in dispute.[1]

In or about September 2016, the defendant was a knowing and willing participant in a plan to smuggle more than five kilograms of cocaine by sea. *Id*. at 18.

On September 15, 2016, a patrol aircraft detected the go-fast vessel (GFV) LA BENDICION carrying the three defendants approximately fifty nautical miles south of the Costa Rica border, in international waters. *Id.* The Coast Guard Cutter FORWARD launched its law enforcement detachment (OTH) to intercept the GFV. *Id*. The personnel aboard the OTH observed the GFV LA BENDICION dead in the water, a Colombian flag painted on

---

[1] The plea agreements, with the exception of the defendant's name and defense attorney, are identical.

the hull of the GFV, the name "LA BENDICION," no registration number for the GFV, and multiple gas canisters and bales on the deck. *Id*.

The master of the vessel claimed Colombian nationality for the GFV and the crew. *Id*. Despite the Colombian flag on the hull and the vessel name, the Colombian government could neither confirm nor deny nationality of the vessel and it was subsequently treated as a vessel without nationality subject to the jurisdiction of the United States. *Id*.

The boarding team recovered multiple bales of cocaine from the GFV LA BENDICION. *Id*. at 19.

In addition to the undisputed facts contained in the plea agreement, the total amount of cocaine seized during this interdiction was 553 kilograms. Dkt. No. 66, at ¶ 14; Dkt. No. 68, at ¶ 16.

Post-*Miranda*, Arroyo-Panameno admitted to being recruited as a mariner on the GFV LA BENDICION for the sum of 50 million Colombian pesos with half of that sum offered as an upfront payment – though he only received 23 million Colombian pesos upfront. The cocaine on the GFV LA BENDICION was intended to be delivered off the coast of Costa Rica. Prior to the interdiction, the defendants traveled for approximately three days and conducted three refuelings at sea.

Post-*Miranda*, Cortes-Franco admitted to approaching an unindicted coconspirator known to be a recruiter for drug smuggling operations seeking to participate in a smuggling trip. He was paid 25 million Colombian pesos approximately one week before departure with another 25 million Colombian pesos to be paid later. Cortes-Franco and Arroyo-Panameno knew each other and Cortes-Franco believed they were both to be paid the same amount. Cortes-Franco corroborated the vessel was refueled at sea, but only described it happening twice.

B.     **Procedural Background**

On September 22, 2016, the grand jury indicted defendants Harinson Moreno-Casquete, Orley Cortes-Franco, and Antonio Arroyo-Panameno on the following two charges: (1) conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii) ("Count One"); and (2) possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a); 18 U.S.C. § 2; and 21 U.S.C. § 960(b)(1)(B)(ii) ("Count Two"). Dkt. No. 1.

All three defendants pleaded guilty before Judge Porcelli on November 29, 2016. *See* Dkt. No. 42.

## II. THE DEFENDANTS DO NOT QUALIFY FOR THE MINOR ROLE REDUCTION

### A. Legal Framework

The proponent of a downward adjustment bears the burden of establishing that he merits the adjustment by a preponderance of the evidence. *United States v. De Varon*, 175 F.3d 930, 934 (11th Cir. 1999). As set forth below, the legal framework concerning mitigating role is found in (1) the U.S. Sentencing Guidelines; (2) *United States v. De Varon* and its progeny; and (3) case law applying the mitigating role analysis in maritime interdiction cases similar to the instant case.

#### 1. U.S. Sentencing Guidelines

Under the U.S. Sentencing Guidelines, a defendant may receive an offense level reduction for having a limited role in the offense. U.S.S.G. § 3B1.2. The defendant may receive a four-level reduction if he was a minimal participant, a two-level reduction if he was a minor participant, or a three-level reduction if he was somewhere in between. *Id.* The adjustment applies to defendants that are "substantially less culpable than the average participant in the criminal activity." *Id.* § 3B1.2 cmt. n.3(A). In particular, the two-level "minor role" reduction applies to a defendant "who is less culpable than most

other participants in the criminal activity." *Id.* § 3B1.2 cmt. n.5. The commentary to U.S.S.G. § 3B1.2 explains that determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality of the circumstances analysis. *Id.* § 3B1.2 cmt. n.3(C). The commentary provides the following non-exhaustive list of factors for consideration:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

### 2. *De Varon* Framework

In the Eleventh Circuit, determining whether a defendant merits a mitigating role reduction involves a two-pronged analysis. First, the court must evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. *De Varon*, 175 F.3d at 934, 940. Second, where the record evidence is sufficient, the district court may also

6

compare the defendant's conduct to that of other participants in the criminal scheme attributed to the defendant. *Id.* at 934, 944.

Concerning the first prong in the *De Varon* analysis, the Eleventh Circuit has explained that a mitigating role reduction for a defendant convicted of conspiracy "only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct *attributed to her*." *Id.* at 941 (emphasis in original). "Otherwise, a defendant could argue that her relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining her role in the offense." *Id.* "A defendant cannot have it both ways." *Id.* Accordingly, "where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.*

Concerning the second prong of the *De Varon* analysis, the Eleventh Circuit has emphasized that "a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants." *Id.* at 944. Instead, "the district court must determine that the defendant was less culpable than *most other participants in her relevant conduct*." *Id.* (emphasis in original). In *De Varon*, the

7

Eleventh Circuit described a helpful example in which three individuals enter a bank intending to rob it. *Id.* (citing *United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir. 1989)). In the example, one defendant stands guard at the bank entrance, another sprays paint on the security camera, and the third gathers money from the teller's cage. *Id.* The court explained that even if one of the participants deserved an aggravating role enhancement, the other participants would not be entitled to a mitigating role reduction. *Id.*; *see also id.* (citing *United States v. Rotolo*, 950 F.2d 70, 71 (1st Cir. 1991)) (recognizing that "one who, say, points a gun at a bank teller and seizes the money is not entitled to a *downward* adjustment simply because someone else in the gang supervised his activities").

To assist in the mitigating role analysis, the Eleventh Circuit has provided a non-exhaustive list of factors to consider in the drug courier context, including the amount of drugs; the fair market value of the drugs; the amount of money the courier was to be paid; whether the courier had any equity interest in the drugs; the courier's role in planning the criminal scheme; and the courier's role in the distribution. *De Varon*, 175 F.3d at 945.

### 3. Application in Maritime Interdiction Cases

The Eleventh Circuit has recently applied the *De Varon* analysis to a maritime interdiction conspiracy case nearly identical to the instant case, and

upheld the district court's decision denying a mitigating role reduction for a crewmember. In *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir. Oct. 20, 2016), the defendant faced the same two charges on which the grand jury here indicted Cortes-Franco and Arroyo-Panameno. The district court in the *Herrera-Villarreal* case sentenced the defendant "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* The Eleventh Circuit emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Id.* The court also pointed out that the defendant presented no evidence demonstrating that he was less culpable than the other crewmembers on the vessel. *Id.*

### B. Analysis

The defendants fail to satisfy their burden to demonstrate that they are entitled to a minor role reduction on either of the two prongs of the *De Varon* analysis.

#### 1. First Prong of *De Varon* Analysis

The first prong in the *De Varon* analysis involves evaluating the

defendants' roles in the conduct for which they are being held accountable. *De Varon*, 175 F.3d at 934, 940. The object of the conspiracy to which the defendants pleaded guilty, and for which the PSR holds them accountable, was to transport approximately 1,150 kilograms of cocaine across international waters from Colombia to Costa Rica.

Several of the *De Varon* and U.S.S.G. § 3B1.2 factors weigh against finding that the defendants had a minor role in this conspiracy. They helped transport 1,150 kilograms of cocaine, which conservatively places the value of this amount of cocaine at an estimated $11.5 to $23 million.[2] The amount of drugs and their worth show that whoever organized the trip placed a high level of trust in the defendants. The Eleventh Circuit has recognized that "the amount of drugs in a courier's possession—whether very large or very small—may be the best indication of the magnitude of the courier's participation in the criminal enterprise."[3] *Id.* at. 943. The Eleventh Circuit has routinely

---

[2] This estimate is based on the article included in defendant Arroyo-Panameno's objections to the PSR for cocaine after being shipped from South America. *See* Dkt. No. 66-1, at 4. The article further states that a kilogram of pure cocaine is worth $150,000 after it is reduced to user amounts and diluted. *Id.* Thus, the street value in the United States may be as high as $172.5 million.

[3] The Eleventh Circuit recently reaffirmed that the amount of drugs the courier possessed is a significant consideration in the minor role analysis, but explained that it cannot be the *only* factor the court considers. *See United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016).

10

upheld denial of the minor role reduction where the amount of drugs was far less than 1,150 kilograms. *See, e.g.*, *United States v. Casas*, 632 F. App'x 1003, 1005 (11th Cir. 2015) (denying minor role reduction where defendant transported three kilograms of methamphetamine); *De Varon*, 175 F.3d at 946 (denying minor role reduction where defendant transported 512.4 grams of heroin).

Additionally, during their post-*Miranda* statements, the defendants told investigators they knew they were transporting drugs and were expecting to be paid the same amount the drugs from Colombia to Costa Rica. These statements demonstrate awareness of the scope of the conspiracy for which they are being held accountable. It also highlights the fact that the defendants were involved in an elaborate international drug trafficking scheme. The defendants' conspiracy was far more complex and large-scale than others in which the Eleventh Circuit has upheld denial of the minor role reduction for drug traffickers. *See, e.g.*, *Casas*, 632 F. App'x at 1005 (denying minor role reduction for defendant who smuggled three kilograms of methamphetamine in a car from Texas to Florida). Finally, as mariners on a go-fast vessel smuggling 1,150 kilograms of cocaine, the defendants were

centrally involved in the core purpose of the conspiracy. They personally participated in attempting to distribute approximately 1,150 kilograms of cocaine.

Furthermore, because the defendants' actual conduct was coextensive with their relevant conduct, they cannot have had a minor role compared to their relevant conduct. Although the defendants' conspiracy may be part of a larger criminal enterprise, they are not being held accountable for the actions of any such larger enterprise. Thus, they cannot use some larger criminal enterprise for purposes of defining their role. *De Varon*, 175 F.3d at 941, 947 (explaining that the court should evaluate the defendant's role based on the conspiracy for which he is held accountable, and rejecting the contention that the court should evaluate the defendant's role based on a "far-flung narcotics enterprise that may stretch from the grower, to the manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor"). The criminal conspiracy of which the defendants were convicted consisted of three men transporting approximately 1,150 kilograms of cocaine across international waters. Although neither were the boat captain, they were mariners on the smuggling vessel. Thus, they were intimately involved in the central object of the conspiracy for which they are being held accountable.

Finally, as in the *Herrera-Villareal* case, here the defendants' offense level is calculated using only the amount of drugs on the vessel. Doc. 61 at ¶¶ 15-25. Thus, their "actual conduct was identical to the relevant conduct attributable to [them]." *Herrera-Villarreal*, 2016 WL 6123493, at *2. Accordingly, because the defendants did not have a minor role compared to their relevant conduct, they cannot carry their burden on the first prong of the *De Varon* analysis.

2. Second Prong of the *De Varon* Analysis

Even if the defendants could satisfy their burden on the first prong of the *De Varon* analysis, they fail to do so on the second prong. The second prong of the *De Varon* analysis involves comparing the defendants' role in the conspiracy to that of other participants in the criminal scheme attributed to them. *De Varon*, 175 F.3d at 934, 944. As discussed above, the conspiracy for which the defendants are being held accountable consisted of three men in a boat transporting approximately 1,150 kilograms of cocaine across international waters. In addition to the three men on the boat, the defendants described other unindicted coconspirators involved in recruitment, dispatch, and receipt. The defendants may argue that these unindicted coconspirators are more culpable than them. But just because these people may merit an offense level enhancement for their roles does not mean that the defendants

merit a mitigating role reduction. *See De Varon*, 175 F.3d at 944. Additionally, the mere fact that someone else hired the defendants to smuggle the drugs, "does not compel the conclusion that [the organizer] was sufficiently more culpable" than the defendants. *Id.* at. 946; *see also id.* at 944 (citing *Rotolo*, 950 F.2d at 71) (recognizing that a defendant is not entitled to a mitigating role reduction merely because someone else in the criminal enterprise supervised his activities).

The crux of the analysis is whether the defendants are "substantially less culpable than the average participant" the conspiracy. U.S.S.G. § 3B1.2 cmt. n.3(A). Put another way, the issue is whether they are "less culpable than *most other participants*" in the conspiracy. *De Varon*, 175 F.3d at 944 (emphasis in original); U.S.S.G. § 3B1.2 cmt. n.5. Here, the average participant in the conspiracy for which the defendants are being held accountable are mariners in the boat transporting the drugs. Because the defendants themselves were mariners, they are not "substantially less culpable than the average participant."

### III. CONCLUSION

For the reasons set forth above, the Court should deny the minor role reduction for Cortes-Franco and Arroyo-Panameno.

        Respectfully submitted,

        W. STEPHEN MULDROW
        Acting United States Attorney

By:   */s/ Daniel M. Baeza*
        DANIEL M. BAEZA
        Assistant United States Attorney
        United States Attorney No. 164
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: Daniel.Baeza@usdoj.gov

**U.S. v. Harinson Moreno-Casquete, et al   Case No. 8:16-cr-407-T-27AEP**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Defense counsel of record

                                    */s/ Daniel M. Baeza*
                                    DANIEL M. BAEZA
                                    Assistant United States Attorney
                                    United States Attorney No. 164
                                    400 N. Tampa Street, Suite 3200
                                    Tampa, Florida 33602-4798
                                    Telephone:  (813) 274-6000
                                    Facsimile:  (813) 274-6358
                                    E-mail:       Daniel.Baeza@usdoj.gov